James D. **HODGSON**, Secretary of Labor, etc., Plaintiff-Appellant,

v.

**TWIN CITY FOODS, INC.**, a corporation, Defendant-Appellee.

No. 26425.

United States Court of Appeals, Ninth Circuit.

July 10, 1972.

Merrill, Circuit Judge, dissented and filed opinion.

Sylvia S. Ellison (argued), David A. Drachsler, Carin Ann Clauss, Bessie Margolin, Washington, D. C., Altero D. D'Agostini, San Francisco, Cal., Peter G. Nash, Solicitor of Labor, Washington, D.C.; Stan Pitkin, U. S. Atty., Seattle, Wash., Donald F. Rector, San Francisco, Cal., for plaintiff-appellant.

Bradley T. Jones (argued), of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for defendant-appellee.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

The Secretary of Labor brought this action under 29 U.S.C. § 217, to enjoin the defendant, a frozen food processor, from violating the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. The district court held that the activities in question were

exempt from the Act's overtime requirements under 29 U.S.C. § 207(c) and (d), and refused to issue the injunction. The Secretary appeals and we affirm.

## FACTS

Defendant is engaged in processing fresh vegetables, operating a plant at Ellensburg, Washington, at which harvested fresh produce is cleaned, graded, frozen, stored, and eventually packaged into final salable form. Fresh produce is received and processed at the plant during the harvest season, approximately August-December. When frozen it is usually stored in bulk containers in a cold storage warehouse before being repacked in final salable form. This is done because (1) the packaging facilities are of insufficient capacity to package all of the fresh crops into ready-for-sale form as they are harvested and received during the season, and (2) defendant is a supplier for institutional buyers and private brands and does not know at the time of harvest either the size of the packages in which, or the labels under which, the various types and grades of frozen vegetables will eventually be sold.

During the harvest season two ten-hour shifts per day are utilized, along with extra employees, to handle the increased workload. The cold storage warehouse is not large enough to handle all the vegetables received during the harvest season. Defendant's employees who repackage the bulk frozen vegetables are required to work overtime during the season, as part of the operations of the plant, to permit the unimpeded flow of fresh produce through the freezing process and into cold storage. During the rest of the year, the employees who do the repackaging do not work overtime. It is not claimed that their work is then exempt. The exemption is claimed only during the harvest season.

### The statutory scheme

The Fair Labor Standards Act provides that no employer may employ any of his employees who are engaged in the production of goods for commerce for a workweek longer than 40 hours without paying them one and one-half times regular compensation for the overtime 29 U.S.C. § 207(a) (1). Subsections (c) and (d) of § 207 establish partial exemptions from the basic overtime provision. The limited exemption under subsection (c) is for employees in an industry found by the Secretary to be of a seasonal nature.[1] The subsection (d) exemption is for persons employed in an enterprise which is in an industry found by the Secretary to be of a seasonal nature and engaged in the handling, packing, storing, preparing, first processing, or canning of any perishable agricultural commodities in their raw or natural state.[2]

1. 29 U.S.C. § 207(c) provides:

   (c) For a period or periods of not more than ten workweeks in the aggregate in any calendar year, or fourteen workweeks in the aggregate in the case of an employer who does not qualify for the exemption in subsection (d) of this section, any employer may employ any employee for a workweek in excess of that specified in subsection (a) of this section without paying the compensation for overtime employment prescribed in such subsection if such employee (1) is employed by such employer in an industry found by the Secretary to be of a seasonal nature, and (2) receives compensation for employment by such employer in excess of ten hours in any workday, or for em-

   ployment by such employer in excess of fifty hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

2. 29 U.S.C. § 207(d) provides:

   (d) For a period or periods of not more than ten workweeks in the aggregate in any calendar year, or fourteen workweeks in the aggregate in the case of an employer who does not qualify for the exemption in subsection (c) of this section, any employer may employ any employee for a workweek in excess of that specified in subsection (a) without paying the compensation for overtime employment prescribed in such subsection, if such employee—

The Secretary made the following finding of seasonality under § 207 for the fruit and vegetable industry (29 C. F.R. 526):

"Sec. 526.12(b) (2). *Fresh fruit and vegetable industry.* Includes only the handling, packing, storing, preparing, first processing, and canning of any fresh fruits and vegetables in their raw or natural state and any other operations and services necessary and incidental thereto. It includes such operations when performed in connection with fresh fruits and vegetables which have been merely refrigerated, but does not include operations performed in connection with fresh fruits and vegetables which have been frozen, preserved, canned, dehydrated, or otherwise changed so that they are no longer perishable or in their raw or natural state. . . ."

The Secretary interpreted the regulation as follows:

"It is the Department's position that the packaging or further processing of fresh fruits and vegetables which have been frozen and stored in bulk for more than a short period would not be within the scope of the exemptions. However, a reasonable break between the freezing and packaging, such as 24 hours or less, would not be regarded as defeating the exemptions." Opinion Letter #697, October 20, 1967.

*Availability of exemptions to defendant*

The district court concluded that the activities of defendant qualified all of its employees for the § 207(c) and (d) exemptions during the harvest season, and that the Secretary's regulations are invalid insofar as they attempt to exclude from the exemptions the employees engaged in packaging frozen vegetables from bulk storage containers during the season. We agree.

The authority which Congress delegated to the Secretary in § 207 was to determine under subsection (c) whether a particular industry was "of a seasonal nature" and under subsection (d) whether an industry was "of a seasonal nature" and was engaged in handling, packing, et cetera, of a perishable raw agricultural commodity. The Secretary has made these findings for the fresh fruit and vegetable processing industry, but seeks to exclude a portion of defendant's employees from the exemptions— those engaged in repackaging the already-frozen produce. To uphold this determination by the Secretary, we would have to hold either that Congress authorized the Secretary to define which particular job classifications within each seasonal industry are entitled to the exemptions or that the Secretary may so tailor his definition of seasonal industry as to effectively eliminate certain employee categories in what would normally be considered a single industry (and that his determination in either regard was not unreasonable). We do no think that, in the circumstances of this case, the Act affords either option to the Secretary.

That some of defendant's employees are involved in repackaging the produce after it has been frozen and stored in bulk containers does not change the na-

(1) is employed by such employer in an enterprise which is in an industry found by the Secretary—

(A) to be characterized by marked annually recurring seasonal peaks of operation at the places of first marketing or first processing of agricultural or horticultural commodities from farms if such industry is engaged in the handling, packing, preparing, storing, first processing, or canning of any perishable agricultural or horticultural commodities in their raw or natural state, or

(B) to be of a seasonal nature and engaged in the handling, packing, storing, preparing, first processing, or canning of any perishable agricultural or horticultural commodities in their raw or natural state, and

(2) receives compensation for employment by such employer in excess of ten hours in any workday, or for employment in excess of forty-eight hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

ture of defendant's business. Mitchell v. Oregon Frozen Foods Co., D.Or., 1956, 145 F.Supp. 157, aff'd 9 Cir., 1958, 254 F.2d 116, cert. granted, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 765, writ dismissed, 361 U.S. 231, 80 S.Ct. 365, 4 L.Ed.2d 267 (1960), held that repackaging of bulk frozen corn into consumer-size packages was an essential part of "first processing" under § 207, even when done off-season. The 1966 amendments to the Fair Labor Standards Act, although changing the particular result in that case by requiring that the § 207(d) exemption apply only during the period of time when perishable agricultural products are actually being received and processed, *i.e.*, during the harvest season and not during the off-season, did not purport to alter the basic holding in *Oregon Frozen Foods*—that first processing of perishable agricultural commodities includes the type of packaging process involved here. *See also* Hodgson v. Stokely-Van Camp, D.Minn., 1971, 330 F.Supp. 253. Indeed, when considering the 1966 amendments, the Congress rejected the policy that the Secretary is attempting to apply. He wants to limit the seasonal exemption so that it will not include the processing of frozen agricultural products which have been "stored" for more than 24 hours. Yet the Congress rejected substantially the same definition when considering the 1966 Act: the original bill limited the exemption to processing of "highly perishable" agricultural commodities, "highly perishable" being defined as incapable of being preserved beyond 24 hours. H.R.Rep. No. 1366, 89th Cong., 2d Sess. 41 (1966). That language and definition were rejected and deleted, yet the Secretary is trying now to impose the same standard by administrative regulation. Such obvious circumvention of Congressional intent should not be permitted.

Finally, the Secretary cites a comment in the 1966 Conference Report which says that the "days of overtime exemptions for employees in the agricultural processing industry are rapidly drawing to a close, because advances in technology are making the continuation of such exemption unjustifiable." Conf. Rep. No. 2004, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Adm. News, p. 3049. However, that pronouncement can hardly be read into a carte blanche for the Secretary to begin narrowing and deleting those exemptions himself. The Congress carefully reconsidered the exemptions in 1966, and it made some significant changes in the scope and availability of the exemptions, but it did not abolish them. Any further changes must also be made by the Congress, not by the Secretary.

None of the cases cited by the Secretary supports his contention that the packaging operation of defendant may be administratively separated from the fresh vegetable processing at the Ellensburg plant. Those cases, Libby, McNeill & Libby v. Mitchell, 5 Cir., 1958, 256 F.2d 832; Wirtz v. Osceola Farms Co., 5 Cir., 1967, 372 F.2d 584; Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; and Southern Garment Mfrs. Ass'n v. Flemming, D.C.Cir., 1941, 74 App.D.C. 228, 122 F.2d 622, are all distinguishable. *Libby* held that the Secretary could properly exclude a by-product cattle feed operation from the fresh citrus fruit industry for purposes of the pre-1966 § 7(b) (3) seasonal industry exemption, but that the old § 7(c) first processing exemption was available. In *Osceola Farms*, the court found that the following employees of a sugar mill were not entitled to the pre-1966 § 7(c) first processing exemption: truck drivers transporting laborers to and from the fields of independent growers, flagmen who stopped traffic at public roads for the safe passage of vehicles hauling sugar cane from the fields to the mill, and personnel who worked in the mill repair shop on machinery used in the fields of independent growers. However, the flagmen and repairmen were entitled to the old § 7(b) (3) seasonal industry exemption; the truck drivers were not because the laborers who harvested the

raw sugar cane were not part of the "sugar milling industry." *Opp* and *Southern Garment* did not even deal with the definition of "industry" under § 7, but rather with the requirements of § 8(c) that certain industries be subdivided into classifications for the purpose of fixing a minimum wage rate for each competitive level within an industry.

It is clear from the stipulated facts in this case that the repackaging process at the Ellensburg plant is an integral part of the overall seasonal operations of defendant. Under the circumstances of this case, the repackaging activities are "first processing" and "operations and services necessary and incidental" to first processing of perishable raw agricultural commodities.

Affirmed.

MERRILL, Circuit Judge (dissenting):

At issue is the power of the Secretary, by regulation, to define those fresh fruit and vegetable industries qualifying under either 29 U.S.C. § 207(c) or § 207(d) as not including "operations performed in connection with fresh fruits and vegetables which have been frozen * * * or otherwise changed so that they are no longer perishable or in their raw or natural state."

By this definition employees engaged in operations upon frozen foods are in an "industry" distinct from those engaged in operations upon fresh fruits or vegetables.[1] Thus an industry line may bisect a single factory.

The majority holds that the Secretary has no power so to define industry. I disagree. The characterization of industry in § 3(h) of the Act indicates the latitude given the Secretary.

" 'Industry' means a trade, business, industry *or branch thereof*, or group of industries in which individuals are gainfully employed" (emphasis added).

Mitchell v. Oregon Frozen Foods Co., 254 F.2d 116 (9th Cir.1958), affirming 145 F.Supp. 157 (D.Ore.1956), on which the majority relies, does not deal with our problem. There the District Court was called upon to define "first processing," since no agency was authorized to do so. Subsequently the Act was amended to authorize the Secretary to make definitions such as this which, at the time of the decision, the courts had been called upon to make.[2]

Nor do I find in legislative history as cited by the majority the congressional rejection of limitations that the majority sees. Congress' refusal to adopt the 24-hour limit may very well have been due to reluctance to get involved in any administrative details or definitions, since it was passing to the Secretary the responsibility for making such determinations.[3]

---

1. The fresh fruit and vegetable industry, however, also embraces operations performed upon commodities which have been frozen within the last twenty-four hours. Such a "reasonable break" between freezing and processing does not defeat the exemption. Opinion Letter # 697, October 20, 1967.

2. Besides deputizing the expert agency, Congress expressed significant new policies in the 1966 Amendments, which expressions were not before the court in *Oregon Frozen Foods, supra.* Congress intended:

"[T]o give notice that the days of overtime exemptions for employees in the agricultural processing industry are rapidly drawing to a close, because advances in technology are making the continu-

ation of such exemption unjustifiable." Conference Report, No. 2004, 89th Cong., 2d Sess., 19 (1966). 2 U.S. Code Cong. & Ad.News (1966), p. 3049.

3. Of more pertinence is the legislative history manifesting a congressional disapproval of broad extensions of the exemptions here involved:

"[T]he exemption [provided by the new § 7(d)] is strictly limited by the requirement that it apply only when the agricultural or horticultural commodities being processed are perishable and in their raw or natural state * * *. Perishable refers to commodities subject to deterioration or spoilage under ordinary circumstances unless some affirmative action is taken within a short time to preserve them from spoilage or decay.

 

The Secretary's definitions of industry boundaries are presumptively correct. Mitchell v. Budd, 350 U.S. 473, 480, 76 S.Ct. 527, 100 L.Ed. 565 (1956); Craig v. Far West Engineering Co., 265 F.2d 251, 257 (9th Cir.1959). They will be stricken by a reviewing court only if the statute has not been applied "in a just and reasoned manner" (Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301 (1911) or in the event that the regulations are "capricious" or rest on an "impermissible standard." Mitchell v. Budd, *supra*.

To me the definition here makes excellent sense and is completely in accord with the spirit of the Act and its intents and purposes. The Secretary, in defining industry, has simply borne in mind what it is that creates seasonal pressures and has limited the overtime exceptions to the branches of an industry that are subjected to those pressures. In this case the only seasonal pressure upon the packaging of frozen vegetables is that caused by the fact that some packaging must be done promptly after freezing, since the frozen foods bins cannot accommodate the whole harvest. This packaging the Secretary has accommodated by including within the industry definitions such packaging as is done within 24 hours of freezing. What is excluded from the definitions is the packaging from the bins—work that can be done at leisure once the seasonal pressures are lifted. I see no reason at all why work in this branch of the industry should be exempted from overtime simply because another branch of the industry is subjected to seasonal pressures.

The majority notes that the exemption claimed by appellant is only claimed during the harvest season. This may be true as of now. The majority ruling, however, frees appellant (to the extent of 20 weeks) to work its employees overtime throughout the year on the packaging of frozen foods should it desire to do so.

---

It should also be noted that the commodity must be in its raw or natural state; that is, in the form in which it is customarily harvested. *When an intervening operation such as freezing changes this condition in significant respects, the commodity is no longer in its raw or* *natural state."* Senate Rep. No. 1487, 89th Cong., 2d Sess., 15–16 (1966). 2 U.S.Code Cong. & Ad.News (1966), p. 3017. *See also,* House Rep. No. 1366, 89th Cong., 2d Sess., 21 (1966) (emphasis added).